IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Pamela Ashby, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>)<br>Eric K. Shinseki, Secretary of )<br>Department of Veterans Affairs, )<br>)<br>Defendant. )<br>) | Civil Action No. 2:11-1050-RMG-BHH<br><br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This matter is before the Court on the defendant's motion for summary judgment [Doc. 18] pursuant to Federal Rule of Civil Procedure 56. The plaintiff brought this case alleging that the defendant failed to promote her and retaliated against her because of her race and gender in violation of Title VII of the Civil Rights Act of 1964. The plaintiff also alleges that she was retaliated against and subjected to a hostile work environment.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTUAL BACKGROUND**

The plaintiff, an African-American female, has been employed at the Ralph H. Johnson V.A. Medical Center in Charleston since August 21, 2005. In 2009 the defendant advertised a vacancy in the Eligibility Office, the Medical Administration Specialist, ("Administration Officer of the Day" or "AOD") a GS-7/9, position. (Def. Ex. 1 at 153.) The job announcement sought applicants with two years "specialized experience as a patient service assistant, customer service assistant or similar position which deals with basic eligibility for care." *Id.*; (Pl. Ex. 14 at 3.) Along with four other candidates, the plaintiff

applied for the position. Only three of the applicants, including the plaintiff, were deemed eligible for the position initially and permitted to continue with the selection process.

It is undisputed that the selecting official was a black male, Stevenson Williams, Chief of Health Administration at the Hospital and responsible for supervising almost 100 employees. He asked Sandra Lombardi, a white female; Gloria Belin, a black female; and Emma Matthews, a black female, to serve on a panel to interview and rate the candidates. (Def. Ex. 2 at 247-48, 260, 276.) He gave the panelists the questions he wanted asked and scoring sheets with answers. *Id.*

None of the three candidates scored well on interview with the panel, including the plaintiff, although she scored the highest of the three. (See id. at 250, 262 Ex. 4 at 349-52.) As a result, all three applicants were rejected for the position. *Id.* In the meantime, the two other applicants, originally deemed ineligible, were subsequently reclassified as eligible, for reasons that will be discussed below. (Def. Ex. 1 at 151.) One of those applicants, Robin Richardson, a white female, scored higher than anyone else on her interview and was awarded the AOD position. (Def. Ex. 2 at 251-52.)

The plaintiff subsequently filed a Complaint of race discrimination with the EEOC. She contends that as a result of it and a second, later-filed EEOC Complaint, she was retaliated against in various ways, including discipline and relocation to an isolated and unhealthy environment.

## **APPLICABLE LAW**

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.

2

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or  "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

3

**DISCUSSION**

**I.     Race Discrimination (Failure to Promote)**

The plaintiff has first pled a cause of action for failure to promote. She complains that she was discriminated against on account of her race in that the defendant denied her request for promotion to the Medical Administration Specialist, "AOD," GS7/9 position. The plaintiff alleges that the defendant rejected her application because she is black.

As the Fourth Circuit has explained, the plaintiff may avert the defendant's summary judgment motion and establish her failure to promote claim "through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added). A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race or gender motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m).

Alternatively, a plaintiff may "proceed under [the McDonnell Douglas ] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285. The plaintiff does not attempt to establish her discrimination or retaliation claim using direct or circumstantial evidence but relies exclusively on the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting proof scheme.

Under *McDonnell Douglas*, an employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If

the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802-05.

### A.     *Prima Facie* Case

To establish her *prima facie* case of a discriminatory failure to promote, the plaintiff must show: (1) that she is a member of a protected class; (2) that she applied for the position in question; (3) that she was qualified for that position; and (4) that the defendant rejected her application under circumstances that give rise to an inference of unlawful discrimination. *See Bryant v. Aiken Reg. Med. Ctrs., Inc.*, 333 F.3d 536, 544-45 (4th Cir. 2003); *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir.1995).

The defendant concedes it - the plaintiff's *prima facie* case. The plaintiff, to the extent she has seized upon such a concession, as some admission that race, in fact, played a role in the decision, is wrong.[1] The *prima facie* case is an artificial, judicially imagined series of ladder rungs which aid the plaintiff in creating a presumption of certain facts, where plain evidence is unavailable. The fact that the defendant surrenders its legal position at this stage of the *McDonnell Douglas* framework admits nothing of its true motives. The defendant has simply drawn lines elswhere.

### B.     **Legitimate Non-Discriminatory Reason**

To that end, the defendant has met its burden to produce a legitimate, non-discriminatory reason for rejecting the plaintiff's application for the AOD position insofar as it has stated that the plaintiff was not the best qualified. (Def. Ex. 2 at 250, 256-57, 262,

---

[1] Also, the defendant's answer to the plaintiff's paragraph 17 of the Complaint [Doc. 5 ¶ 17], reasonably only admits the *contention* of the plaintiff that race was a factor and not that race was, indeed, an animating factor in the defendant's decision. Even if it were not, the Court wold allow leave to amend because to concede that averment would be to confess the whole case, an intent the defendant's continued litigation and present motion belies.

351; Def. Ex. 3 at 190-91.)  Specifically, the defendant has offered that Robin Richardson had an average interview score of 17 to the plaintiff's 15.  (Def. Ex. 2 at 256-57.)

"Job performance and relative employee qualifications [are] widely recognized as valid, non-discriminatory bas[i]s for any adverse employment decision."  *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *see also Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004); *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir. 1998).

### C.     Pretext

Because the defendant has proffered a legitimate, non-discriminatory reason for its actions, the plaintiff bears the burden of demonstrating that the real reason for denial of the promotion was, in fact, an unlawful one.  *See Reeves*, 530 U.S. at 142-43.   As is most common, the plaintiff attempts to satisfy this burden by suggesting that the defendant's proffered reasons are pretextual or false.  *See id.* at 144.  Specifically and principally, the plaintiff contends that the reason for her disqualification for the job must necessarily have been false because the individual selected, Richardson, was originally deemed unqualified and was also given, ahead of time, the answers to the interview questions, on which she outperformed the plaintiff.

The plaintiff has not made an actual qualifications argument.  In other words, she does not attempt to prove pretext by showing that she was, in fact, so dramatically more qualified than Richardson that discrimination could be reasonably inferred from her rejection. If she were, and as the defendant directs, the plaintiff would be required to show that her "qualifications [were] ***demonstrably superior***" to that of Richardson's and not just "similar or only slightly superior."  *Heiko v. Columbo Savings Bank, F.S.B.*, 434 F.3d 249, 261-62 (4th Cir. 2006) (emphasis added).  The plaintiff has not made any attempt to argue that she was more qualified than Richardson, demonstrably so or otherwise.

6

Instead, she has simply cast aspersions on the veracity of the explanation. This is appropriate. The United States Supreme Court has indicated that the sheer "falsity" of the reason in combination with the *prima facie* case is enough to establish pretext. *See Reeves*, 530 U.S. at 147; *Anderson,* 406 F.3d at 269. The plaintiff's accusation is twofold.

First, she contends that the defendant's explanation as to Richardson's superior performance is worthy of suspicion because Richardson was originally deemed unqualified to even sit for the interview, in which she ultimately performed better than the plaintiff.

Five individuals applied for the AOD position: the plaintiff, Johnny Scott, Barbara Baker, Delores Gilmer, and Robin Richardson. Delores Gilmer, a black female, and Robin Richardson, a white female, were initially informed that they were *ineligible* for the AOD promotion and would not be allowed to interview. (Def. Ex. 1 at 151.) Both Gilmer and Richardson, however, had been deemed *eligible* for the identical promotion two years prior. *Id.* Based upon the request of union officials, Human Resources reviewed Gilmer's and Richardson's eligibility and found them, indeed, eligible, essentially for the reason that they had been so found, previously. (Def. Ex. 5 at 120-25; Def. Ex. 6 at 6-13.) In explaining the redetermination, Francea Garrett, the Human Resources individual who found Richardson eligible, has repeatedly stated that there existed a "practice" of reconsidering ineligibility based on prior determinations of it. (Pl. Ex. 7 at 13; Pl. Ex. 10 at 15-16.)

The plaintiff complains that there existed no policy that would have permitted such redetermination as to Gilmer and Richardson's eligibility. The defendant has never produced one in response to various discovery attempts concerning the existence of such policy. But, the plaintiff has stretched the testimony too far. Garrett never testified as to some written policy but has only ever indicated the presence of a "past practice" that would permit reconsideration. *Id.* And, the plaintiff has certainly not produced a policy which *prohibits* such reconsideration. Nor has the plaintiff otherwise established that such an unwritten practice or course of dealing was, in fact, not employed as the defendant

7

contends. So the Court cannot see how the plaintiff can make any kind of serious "hay," so to speak, out of a want of some formal policy in this regard.

But, the plaintiff makes a related point. Namely, that the 2007 AOD position posting was, in fact, not identical to the 2009 one, and that Richardson was actually found ineligible in 2009 for precisely the criteria not included in the earlier posting. Specifically, the plaintiff contends that the 2009 posting required Specialized Experience for the GS-7 and the GS-9, which the 2007 posting did not. (Compare Pl. Ex. 14 at 3-4 with Pl. Ex. 15 at 2.) Richardson was, indeed, initially found ineligible for not having met the Specialized Experience qualification of the 2009 posting. (Pl. Ex. 5.)   Even still, the Court disagrees that pretext is established in this evidence.

While the 2009 posting has more descriptive detail with respect to the "Specialized Experience" requirement than the 2007 posting, the quantitative requirement in this portion of the posting appears identical in each:  For GS-7, "1 year equivalent to the next lower grade level (GS-5)" and, for GS-9, "1 year equivalent to the next lower grade level (GS-7)." *Id.* In material part, this exact language appears in both postings. *Id.* To the Court's satisfaction, the plaintiff has not explained how the additional descriptive verbage contained in the 2009 posting could be viewed by a reasonable juror as altering the substantive demands of the qualification requirement. The defendant, who is expert in its own requirements, has offered evidence that the qualifications of the two postings were comparable  (Def. Ex. 5 at 120-25; Def. Ex. 6 at 6-13) and that because Richardson had been deemed to have met them in 2007, she, therefore, should be deemed so qualified in 2009, *id.* The plaintiff has failed to create any issues of fact about the relative content of the two postings such that the defendant's representation that Richardson was qualified under both might appear suspect. They, by all critical accounts, appear identical.

The plaintiff makes a last appeal. She has put forward evidence that Anthony Holmes, an eligibility clerk in the Eligibility Office, coached Richardson in the answers to the

interview questions, on which she outperformed the plaintiff. (Pl. Ex. 16 at 142-43; Pl. Ex. 17; Def. Ex. 1 at 155.) The Court, initially took this testimony as dispositive of the plaintiff's ability to survive summary judgment. But, upon closer examination, there are problems with it. There is no evidence that Holmes is a supervisor or decisionmaker. There is no evidence that he was instructed to coach Richardson by a supervisor or decisionmaker. There is no evidence that the triumvirate of individuals on the interview board participated with, or consented to, Holmes preparation of Richardson. There is no evidence that Holmes harbored racial animus or even personal sentiment against the plaintiff. In fact, Holmes is a black male, which makes the presence of racial prejudice more dubious. Accordingly, the Court cannot see how a jury should be permitted an opportunity to ascribe discriminatory liability to the defendant for the independent conduct of Holmes, even as it might have unfairly benefitted Richardson. And, as courts so regularly emphasize, Title VII is not a protection against all inequities in employment decisions. Rather its only object is to remedy unfairness arising out of discrimination against certain protected classes of individuals. That Richardson received inside information from a co-worker, albeit unfair, does not qualify as legal race discrimination. More critical to the framework analysis, Richardson's advantage, as alleged, cannot be construed as some evidence that the defendant is lying about the reason for its decision. The plaintiff has not linked Holmes' conduct to the corporate actor such that the defendant's formal explanation for its decision is undermined. The Court would, but does not see how it could, recommend differently.

Accordingly, the plaintiff has not created issues of fact as to whether or not the defendant's legitimate, non-discriminatory reason for not promoting the plaintiff is in fact pretextual or false. The claim, therefore, should be dismissed.

## II.     Retaliation

Next, the plaintiff contends that she was retaliated against for having filed a formal complaint with the Equal Employment Opportunity Commmission ("EEOC") office, in June 2009. Title VII makes it an "unlawful employment practice for an employer to discriminate against any of [its] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). The *McDonnell Douglas* burden shifting scheme, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies in analyzing retaliation claims under Title VII. *Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000). The plaintiff does not attempt to use direct evidence to establish her claim of retaliation.

### A.     *Prima Face* Case

In order to establish a *prima facie* case of Title VII retaliation, the plaintiff must prove three elements: (1) that she engaged in a protected activity, (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action. *See EEOC v. Navy Federal Credit Union,* 424 F.3d 397, 406 (4th Cir. 2005); *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004).

The defendant contends that the plaintiff cannot establish either the second or third elements of her *prima facie* case.[2] First, the defendant contends that no adverse employment action was ever taken against the plaintiff. The plaintiff responds, however, that the offer of transfer was just such an action.

In *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006), the United States Supreme Court articulated an objective test for what constitutes an adverse employment action for purposes of a Title VII retaliation claim. Specifically, the Supreme Court stated that an adverse employment action is any action which might have "dissuaded

---

[2] The defendant actually collapses its arguments regarding the plaintiff's retaliation and hostile work environment claims. Those causes are not the same and the conflated treatment makes consideration of some the defendant's points less than clean.

10

a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (citation omitted). The retaliation provision of Title VII is intended to prohibit employer actions "that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." *Id.* Although normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence, *i*d., an employer's actions are to be considered in light of the "circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances," *id.* at 2417. The plaintiff has fairly easily created a genuine issue of fact that she suffered various adverse employment action. Specifically, less than ninety (90) days after the plaintiff filed her Complaint with the EEOC, she received a verbal counseling and written warning from her First Line Supervisor, Sandra Lombardi. (Pl. Ex. 22; Def. Ex. 10.)

Courts have held that a written warning or letter of counseling may rise to the level of an adverse employment action "if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities." *Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir.2005): *see also Roberts v. Roadway Express*, 149 F.3d 1098, 1104 (10th Cir.1998) (holding that the plaintiff's written warnings constituted adverse employment actions, where "the record indicate[d] that the more warnings an employee received, the more likely he or she was to be terminated for a further infraction"); *Newman v. Giant Food, Inc.*, 187 F.Supp.2d 524, 528 (D. Md. 2002) (holding that the plaintiff failed to establish that a counseling letter constituted an adverse employment action, since he had not presented any evidence that the reprimand was "counted against him," or that it "potentially led to termination, demotion, a decrease in pay or similar adverse action").

In this case, the plaintiff contends that she was given, in November 2009, a less than exceptional evaluation by her First and Second Line Supervisors, even though in each of the

11

two years prior she had received exceptional evaluations. (Pl. Exs. 1, 2.) She has also put forward evidence that she was given a letter of reprimand in her file on May 24, 2010. The Court believes, as the plaintiff would argue, that there is sufficient circumstances from which to a reasonable jury could conclude that the verbal counseling and written warning increased the likelihood and severity of subsequent discipline, both in the poor evaluation, one month later, and the letter of reprimand. Poor evaluations and letters of reprimand seem plainly to qualify as circumstances that might "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 126 S. Ct. at 2415.

If not, the plaintiff has identified an additional retaliatory act. She contends that on the same day she received the letter of reprimand, May 24, 2010, she was was removed from the Eligibility Office and put in an isolated trailer. (Pl. Ex. 19.) The plaintiff was segregated away from all other employees and placed in an enclosed area that was a file room. No other employee was placed in the trailer. The plaintiff has described it as dusty and "a nightmare" and testified that she was completely "isolated" and that it caused her mental health problems. (Pl. Ex. 16 at 53-54.) She was moved to two other locations over a period of approximately 10 months, of allegedly comparable quality. (Pl. Ex. 16 at 56.)

The defendant has made no response concerning these allegations, whatsoever. Under the *Burlington* standard, the Court believes that issues of fact exist as to whether they type of isolation alleged might reasonably rise to the level of an adverse employment action.

For all these reasons, the second element of the plaintiff's *prima facie* case is satisfied.

Concerning the third element of her *prima facie* case, the Fourth Circuit has held that "very little evidence of a causal connection is required to establish a *prima facie* case" and "merely the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient" to satisfy the causation element of a prima facie retaliation case. *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 443 (4th Cir.1998); *see also*

*Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir.1989) (holding three month time period between protected activity and termination sufficient to satisfy the causation element of the prima facie case of retaliation); *Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994) (finding causal link between filing of retaliation complaints and the plaintiff's demotion five months later). Here, the plaintiff was given verbal counseling and a written warning, in June 2009 and on August 18, 2009 (Pl. Ex. 22), respectively, within 90 days of her first EEOC Complaint, made in May 2009 (Def. Ex. 10). Such conduct is therefore sufficiently close to establish causation at this stage.

Her alleged isolation in the trailer, however, is more attenuated. She filed a second Complaint with the EEOC, for retaliation, in September 2009. (Def. Ex. 11.) She was not moved from the Eligibility Office to the trailer until May 24, 2010. Although, three and five month periods of time have been found sufficiently small to establish a causal connection for purposes of a plaintiff's *prima facie* case, eight months, alone, might be too long. *Cf. Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir.1989) (holding three month time period between protected activity and termination sufficient to satisfy the causation element of the prima facie case of retaliation); *Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994) (finding causal link between filing of retaliation complaints and the plaintiff's demotion five months later). In this case, however, the plaintiff has arguably established actionable conduct proximately close, in the first counseling and warning, which, if believed by a jury, might create some justification for interpreting later adverse action – removal to the trailer, albeit more remotely attenuated, as still possibly related and retaliatory conduct. The Court would say issues of fact exist as to this element and the entire *prima facie* case.

### B.     Legitimate Non-Discriminatory Reason & Pretext

The defendant has made some explanation of the verbal counseling and written warnings. Specifically, the defendant has put forward evidence that patients of the

13

defendant complained about the plaintiff's behavior and attitude  (Def. Ex. 18 at 1349-56) and that these formed the basis for the June and August counseling and warning.  The plaintiff has attempted to diminish the force of these complaints, to the extent they represent justification for the defendant to reprimand her, by presenting evidence that complaints had been levied against the entire Eligibility office.  (See Pl. Ex. 20.)  But, the plaintiff would emphasize that the only two individuals who actually received some formal warning or counseling were the two individuals who filed EEOC charges, the plaintiff and Delores Gilmer.  (See Pl. Ex. 21 at 76-78; Pl. Ex. 3 at 14, 18.)  The plaintiff's evidence has some persuasiveness.  It is a close call, but a jury might believe that the plaintiff was singled out for discipline where others similarly situated were not, even when she might have legitimately deserved the counseling as a strictly abstract matter.  In other words, a jury could find evidence of retaliation in the disparate treatment of others who were complained about but not disciplined.  *See Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005 ("Disparate treatment of similarly situated employees is one way to demonstrate unlawful discrimination and retaliation.")   The defendant claims that the plaintiff has not identified these similarly situated individuals.  But, she has.  The plaintiff has submitted evidence suggestive of the fact that *all* the Eligibility clerks received such complaints.  (See Pl. Ex. 20  Pl. Ex. 21 at 76-78; Pl. Ex. 3 at 14, 18.)

The defendant has made no explanation of the plaintiff's relocation to the trailer.  Accordingly, its burden of production regarding this alleged retaliation has not been satisfied.  *See Burgess v. Bowen*, 466 Fed. Appx. 272, 276 (4th Cir. 2012) (stating that *McDonnell Douglas* applies to retaliation claims involving circumstantial evidence).

The retaliation claim should survive summary judgment.

**III.    Hostile Work Environment Claim**

The defendant has also moved for dismissal of the plaintiff's hostile work environment claim.  Neither party has dealt squarely with the actual legal requirements of the claim.  As

14

stated, the defendant conflates its arguments concerning the hostile work environment claim with those concerning retaliation. The plaintiff, by contrast, largely focuses on her subjective mental condition allegedly resulting from this hostile environment. The deficiencies in both positions amounts to a kind of wash.

To establish a hostile work environment claim, the plaintiff must prove by a preponderance of the evidence that he was subjected to (1) unwelcome harassment; (2) based on her race; (3) that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive atmosphere; and (4) that is imputable to the defendant. *See EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir.2009). As stated, the parties have not argued the elements.

### 1.     Severe or pervasive

The "severe or pervasive" element of a hostile work environment claim "has both subjective and objective components." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003) (en banc). First, the plaintiff must show that he "subjectively perceive[d] the environment to be abusive." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). Next, the plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998).

Issues of fact exist as to the plaintiff's subjective impression. The plaintiff has provided evidence that she was physically effected by the alleged hostile environment. (See Pl. Ex. 16 at 153-55; Pl. Ex. 26.) A reasonable jury could conclude, based on this evidence, that the plaintiff subjectively perceived the defendant's conduct as severe or pervasive. *See, e.g., Spriggs*, 242 F.3d at 185-86 (finding a victim's complaints to supervisors about harassment shows he believed the environment was hostile or abusive).

As to the objective severity of the harassment, it "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the

circumstances,'" giving "careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale*, 523 U.S. at 81; *see also Harris*, 510 U.S. at 23 (warning whether a hostile environment actually existed "can be determined only by looking at all the circumstances").  "There is no mathematically precise test" for determining when a hostile or abusive work environment exists. *Harris*, 510 U.S. at 22. The circumstances that should be considered include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23; *see also EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).  But, "'no single factor is' dispositive." *Sunbelt*, 521 F.3d at 315 (quoting *Harris*, 510 U.S. at 23).

In order to be actionable, the harassing "conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment." *Id*. (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).   The Fourth Circuit has "recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test."  *Id*.  It has stated, therefore, that the "task then on summary judgment is to identify situations that a reasonable jury might find . . . instances where the environment was pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimidate,' thereby creating an abusive atmosphere." *Id*. (quoting *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 695 (4th Cir. 2007).  "[W]hether harassment was sufficiently severe or pervasive to create a hostile work environment is 'quintessentially a question of fact' for the jury." *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 199-200 (4th Cir. 2000) (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 243 (4th Cir. 2000)).

As alleged, the plaintiff's relocation to the trailer and subsequent isolated workstations was of at least a ten month duration.  The plaintiff describes it as dusty, unkempt, and a

nightmare. It seems that a jury might conclude that such isolation was both severe and that it unreasonably interfered with her ability to perform her work.

Admittedly, this case does not involve some of the humiliating and intimidating conduct which typically marks a hostile work environment case. But, because the defendant has essentially left these factual allegations unrejoined, the true severity and pervasiveness of the conduct remains mostly a mystery. Even still, the plaintiff has submitted enough evidence to imagine that mystery being resolved in her favor.

To the Court, all of the *Harris* considerations are present, although to varying degrees, and constitute moderate indicia of objectively severe and pervasive harassment.

The defendant has not seriously challenged any other element of the claim such that the plaintiff's burden to respond is implicated. The Court believes, reservedly, that the claim should endure until a more full factual case is made.

### IV.     Sex/Gender Discrimination and 42 U.S.C. § 1981

The defendant has made other arguments that the plaintiff's Sex/Gender Discrimination and 42 U.S.C. § 1981 claims should be dismissed. The plaintiff makes no rejoinder. The Court, therefore, considers them abandoned. The defendant's position as against these claims would have been considered effective, regardless.

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 18] be GRANTED in part and DENIED in part. Specifically, the defendant's motion, as to the plaintiff's failure to promote, sex/gender discrimination, and 42 U.S.C. § 1981 claims should be GRANTED. As to the plaintiff's retaliation and hostile work environment claims, it should be DENIED.

IT IS SO RECOMMENDED.

                                                                    s/Bruce H. Hendricks
                                                                    United States Magistrate Judge

December 12, 2012
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).